UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY RACHELLS, ) | CASE NO. 1:08CV2815 |
| ) | |
| Plaintiff, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| vs. ) | OPINION AND ORDER |
| ) | |
| CINGULAR WIRELESS EMPLOYEE ) | |
| SERVICES, LLC, et al., ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #49) of Defendants, Cingular Wireless Employee Services, LLC and New Cingular Wireless Services, Inc. (collectively "Cingular"), in Limine. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

Plaintiff, Anthony Rachells, an African-American male, began working for Ameritech Corporation as a sales representative in the company's Cleveland region in 1996. Eventually, Plaintiff was promoted to the position of account manager for Ameritech's Indirect Channel division. Ameritech was subsequently acquired by SBC Communications, Inc. In 2000, the domestic wireless divisions of SBC and Bellsouth Corporation entered into a joint venture to form Cingular. Plaintiff maintained his employment throughout these changes. During his tenure, Plaintiff had several supervisors; but he reported to Keith Hart from 2003 until his termination in 2005. David Fine, a Caucasian male, was the Director of the Indirect Channel for the Cleveland region from May 2001 through the end of Plaintiff's term of employment.

While with Cingular, Plaintiff received numerous awards for achievement in sales. In addition, Plaintiff received the highest 2003 performance evaluation score among his peers at Cingular.

In October of 2004, Cingular acquired AT&T Wireless Services, Inc. ("AT&T"); and Cingular's leadership directed its management teams to realign their workforce in light of the acquisition. The realignment process resulted in the elimination of jobs across the country ("reduction in force" or "RIF"). Upper management directed David Fine to review the productivity of Cingular and AT&T Indirect Channel Account teams. Fine determined that it was only necessary to retain four of the nine National Retail Account Executives currently employed between the two companies. Keith Hart evaluated all nine candidates and ranked them in order of the ones most qualified to be retained.

In his 2004 annual review, Hart assigned Plaintiff an overall score of 2.6 out of 5 for his performance during the year. This was the lowest 2004 performance score received by any of the nine candidates. Hart also assigned Plaintiff a score of 2 out of 5 in the areas of "Create Customer Loyalty" and "Drive For Results," and 3 out of 5 in the area of "Use Sound Judgment." Plaintiff's combined score in the RIF selection process ranked him seventh among the nine candidates. By Defendant Cingular's own admission, David Fine signed off on the rankings determined by Keith Hart. (Motion in Limine, ECF DKT #50 at 10). The four candidates ultimately chosen to remain with Cingular were three Caucasians and one Hispanic.

In February 2005, Plaintiff was notified that he would be terminated effective April 15, 2005. On December 1, 2008, Plaintiff filed suit for race discrimination arising out of his

discharge.

On November 6, 2015, Cingular filed its Motion in Limine seeking to exclude the testimony of two former Cingular employees, Michael A. Johnson and Maribel R. Jones. Cingular argues that Johnson's and Jones' allegations of a race-based discriminatory work environment at Cingular constitute "me too" evidence and lack the probative value necessary for introduction at trial.  Any potential probative value of their testimony is far outweighed by the substantial prejudice Cingular would suffer and the use at trial would only serve to confuse the jury.

Jones is a Hispanic/Puerto Rican woman who was employed as a Store Manager at several Cingular locations from September 1996 until December 2003.  (Jones Affidavit, ECF DKT #50-2).  David Fine became District Manager of the Retail Stores in approximately 2002.  *Id*.  Troy Bagshaw, a Caucasian male, was Jones' direct supervisor; and Jones had direct personal knowledge that Bagshaw had extremely poor sales performance.  *Id*. Nevertheless, Fine promoted Bagshaw to District Manager.  *Id*.  Despite her success as Store Manager, Bagshaw gave Jones an unreasonably low performance evaluation in 2003.  *Id*. Jones challenged this evaluation with Fine and Bagshaw, but received no satisfaction.  *Id*. Jones checked a company website where employee stats were available; and she felt there was no justification for her low score absent racial discrimination.  *Id*.  Plaintiff sent emails to Cingular's human resources officer, Vicki Barr, regarding "blatant racism" at Cingular directed at Jones and others.  *Id*. at ¶ 39.  According to Jones, Barr "just ignored the problem and swept it under the rug."  *Id* at ¶ 42.  Jones voluntarily quit Cingular in December 2003 because of the racial animus and harassment from Bagshaw and the climate of racial

discrimination fostered by Fine. *Id*. at ¶¶ 44-48. Jones has personal knowledge that Plaintiff was an outstanding Account Rep and National Retail Account Executive and that his attainment percentage far exceeded that of his peers at Cingular. *Id*. at ¶¶ 55-56.

Michael Johnson is an African American male who was employed at Cingular from November 2000 to July 2004. (Johnson Affidavit, ECF DKT #50-1). Johnson received numerous awards for exceeding performance quotas as Store Manager. *Id*. at ¶ 15. Johnson and Troy Bagshaw applied for the position of District Manager in 2003. Bagshaw, a Caucasian male, was promoted despite poor sales performance. *Id*. at ¶¶ 16-19. When Johnson questioned David Fine about the Bagshaw's promotion, Fine was insulted that [Johnson] questioned him. *Id*. at ¶ 23. Johnson "received an employee performance evaluation for the 2003 year from Troy Bagshaw of 1.5 out of 5.0." *Id*. at ¶ 30. Johnson challenged this evaluation with Fine and Bagshaw but nothing was done about it. Johnson felt there was no justification for his low score absent racial discrimination. *Id*. at ¶¶ 33-35. Plaintiff sent emails to Cingular's human resources officer, Vicki Barr, regarding "blatant racism" at Cingular directed at Johnson and others. *Id*. at ¶ 37. Johnson has personal knowledge that Vicki Barr never addressed this issue as she should have. *Id*. at ¶ 40. Johnson states that " a majority of the minorities in Cingular received extremely low and unwarranted and racist employee performance evaluations under Dave Fine's reign." *Id*. at ¶ 45. Johnson voluntarily quit Cingular in July 2004, based on what he believed to be racial animus in his 2003 employee evaluation. *Id*. at ¶ 41.

## II. LAW AND ANALYSIS

**Motions in Limine**

"Motions in Limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Insurance Co. v. General Electric Co.*, 326 F.Supp. 2d 844, 846 (N.D.Ohio 2004) (citing *Jonasson v. Lutheran Child and Family Serv.*, 115 F.3d 436, 440 (7th Cir.1997)).  A "motion *in limine*, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue . . . the trial court is certainly at liberty '* * * to consider the admissibility of the disputed evidence in its actual context.'" *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986) (citing *State v. White*, 6 Ohio App.3d 1, 4 (1982)).  "Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."  *Luce v. United States*, 469 U.S. 38, 41 (1984).

Fed.R.Evid. 401 defines relevant evidence as evidence tending to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Moreover, Fed.R.Evid. 402 provides that evidence that "is not relevant is not admissible."

Evaluating "me too" testimony for relevance "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).

Cingular denounces the probative value of the "other acts" evidence offered in the testimony of Jones and Johnson.  Jones and Johnson were employed in a "different business channel" than Plaintiff.  Jones and Johnson were directly supervised by Troy Bagshaw who

had no connection to the RIF resulting in Plaintiff's termination.  The incidents related by Jones and Johnson occurred in 2003, whereas Plaintiff was evaluated in 2004 and let go in 2005.  Keith Hart, and not Fine nor Bagshaw, was the actual decision-maker in this case according to Cingular.

The Court acknowledges each of Cingular's arguments but disagrees that the Jones and Johnson evidence and testimony should be excluded.  Their testimony is relevant to Plaintiff's claim that a discriminatory atmosphere existed at Cingular and motivated his wrongful termination.

Fine promoted Bagshaw, a Caucasian male, to the position of District Manager over Johnson, an African American male, and despite Bagshaw's poor sales performance as a store manager.  Bagshaw gave both Johnson and Jones allegedly unjustifiably low employee performance evaluations in 2003; and Fine did not respond to Jones' and Johnson's challenges to the "racially biased" reviews.  In Jones' and Johnson's experience, Fine "fostered" a racially discriminatory atmosphere at Cingular.  These occurrences in 2003 are not so temporally remote relative to the RIF as to be irrelevant to the factfinder's consideration

Significantly, Fine was responsible for determining which employees in his region would be retained after the RIF.  Keith Hart told Plaintiff at his 2003 performance evaluation that Fine "had it in" for him.  Once Hart evaluated the nine candidates, ranked Plaintiff seventh out of the nine individuals and named the top four to be retained, his findings were submitted to Fine for final approval.

Johnson and Jones can offer testimony as to their personal experience with, and

treatment by, Caucasian supervisors during Fine's tenure as Director for the Cleveland region. However, Johnson (unlike Jones) cannot testify about Bagshaw's or other Caucasian employees' sales performance. Jones accessed a company website providing her with sales figures for herself and comparable employees; and, in addition, Jones worked alongside Bagshaw and knows how many phones she and Bagshaw sold to meet the store's quota. Johnson does not possess that same personal experience and knowledge. Johnson's opinion about his qualifications in relation to other employees is speculative and subjective; and the Court will exclude that portion of his Affidavit and potential testimony from consideration as inadmissible hearsay. Specifically, the Court excludes ¶¶ 18, 19, 22 and 45 of Michael Johnson's Affidavit (ECF DKT #50-1).

## III. CONCLUSION

For these reasons, the Motion (ECF DKT #49) of Defendants, Cingular Wireless Employee Services, LLC and New Cingular Wireless Services, Inc. (collectively "Cingular"), in Limine is granted in part and denied in part.

**IT IS SO ORDERED.**

                                              **s/ Christopher A. Boyko**
                                              **CHRISTOPHER A. BOYKO**
                                              **United States District Judge**

**Dated:  June 8, 2016**